**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DOTEXAMDR, PLLC,<br>*Plaintiff*,<br><br>v.<br><br>HARTFORD UNDERWRITERS INSURANCE COMPANY,<br>*Defendant*. | No. 3:20cv698(MPS) |

**RULING ON MOTION TO DISMISS**

In this diversity action, Dotexamdr, PLLC seeks a declaratory judgment that its insurance policy with Hartford Underwriters Insurance Company provides coverage for business interruption losses it sustained as a result of the COVID-19 pandemic. The Defendant moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).[1] ECF No. 50. For the reasons that follow, the motion is granted.

## I. FACTUAL ALLEGATIONS

Plaintiff makes the following factual allegations in the operative Third Amended Complaint, ECF No. 47, which I assume to be true for the purpose of this motion.

Plaintiff owns and operates a chiropractic practice in Dallas, Texas. ECF No. 47 at ¶ 8. It obtained a business owner's insurance policy from the Defendant, which provided coverage from November 21, 2019 through November 21, 2020. *Id.* at ¶ 10. On March 22, 2020, in response to the COVID-19 pandemic, Dallas County issued a Shelter-in-Place order. *Id.* at ¶ 61. On March 31, 2020, the State of Texas issued an order "that no one was entitled to leave their house except for essential activities." *Id.* at ¶ 62. "Plaintiff's business was unable to operate due to the stay-at-

---

[1] Although the parties have requested oral argument, the Court has determined that oral argument is not necessary to resolve the motion.

home orders[.]" *Id.* at ¶ 64. "As a direct consequence of the stay-at-home orders" issued by the State of Texas, Plaintiff's practice "suffered business losses." *Id.* at ¶ 65. "Plaintiff's business loss occurred when Dallas County issued its March 22, 2020 Shelter-in-Place Order, directing all 'non-essential' businesses to cease operations at physical locations and prohibiting the gathering of 'non-essential' individuals. *Id.* at ¶ 71. "Plaintiff has suffered 'direct physical loss of or damage' to its property due to the COVID-19 Pandemic." *Id.* at ¶ 77. "COVID-19 made the [Plaintiff's] property unusable in the way that it had been used before the Pandemic, rendered the property substantially unusable and uninhabitable, intruded upon the property, damaged the property, prevented physical access to and use of the property, and caused a suspension of business operations at the property." *Id.* at ¶ 77. "The COVID-19 pandemic also caused physical loss and damage to property near Plaintiff's Insured Property." *Id.* at ¶ 78. "Instead of being able to operate Plaintiff's business normally, the Insured Property was required to physically alter and drastically reduce operations, and even to close entirely." *Id.* at ¶ 79. "The high probability of illness and contamination prevents the full physical use of the property." *Id.* Because people "constantly cycle in and out of the practice," there "is an ever-present risk that the Insured Properties are contaminated and would continue to be contaminated." *Id.* at ¶ 80. "As a consequence of the orders [issued by the County and the State], Plaintiff's property was physically impacted, such that it could not be used for its intended purpose." *Id.* at ¶ 81.

Plaintiff submitted a claim to Defendant for its losses but the Defendant denied coverage on the grounds that, among other reasons, (1) the Plaintiff's claimed losses were precluded from coverage due to the policy's “virus exclusion” and (2) the Plaintiff had not suffered "direct physical loss of or direct physical damage" to its property, as required to trigger coverage. *Id.* at ¶¶ 12, 64.

In turn, Plaintiff filed suit, seeking a declaratory judgment that it is entitled to coverage under the policy.

## II. PERTINENT POLICY LANGUAGE[2]

The policy provides:

> **A. COVERAGE**
> We will pay for direct physical loss of or direct physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss.

ECF No. 51-1 at 20. "Covered property" includes buildings, fixtures, and business personal property. *Id.* A Covered Cause of Loss "means direct physical loss or direct physical damage unless the loss or damage is excluded or limited in this Coverage Part." *Id.* at 21. Additional key policy provisions are set forth below.

<u>Business Income</u>

Under Business Income and Extra Expense, the policy states:

> **Business Income**
> **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss or direct physical damage to property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.
>
> * * *
>
> **(3)** Business Income means the:
> **(a)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or direct physical damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

---

[2] Defendant attached to its motion to dismiss the Business Owner's policy at issue. ECF No. 51-1 at 8 – 168. Because Plaintiff had actual notice of this document, relies upon it in framing its complaint, and does not contest its authenticity in its opposition, I rely upon the document in adjudicating the motion to dismiss. *See Ainsworth v. Amica Mut. Ins. Co.*, No. 3:16CV1139, 2018 WL 4425991, at *3 (D. Conn. Sept. 17, 2018).

**(b)** Continuing normal operating expenses incurred, including payroll expenses.

* * *

**Extra Expense**

**(1)** We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or direct physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

*Id.* at 65, 66.

Business Income for Civil Authority Actions

Under this provision, the policy states:

**Business Income for Civil Authority Actions**

**(1)** When a Covered Cause of Loss causes direct physical loss or direct physical damage to property other than at the “scheduled premises”, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur during the “civil authority period of restoration” caused by action of civil authority that prohibits access to the “scheduled premises” provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the “scheduled premises” are within that area but are not more than one mile from the damaged property; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 76.

Limited Fungi, Bacteria or Virus Coverage

This provision states:

**Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus**

**(1)** The coverage described in Paragraph **(2)** below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(a)** A "specified cause of loss" other than fire or lightning;

**(b)** An "equipment breakdown accident" occurs to "equipment breakdown property", if the Equipment Breakdown Additional Coverage is attached to this Coverage Part.

**(2)** The coverage described below applies only when a Limit of Insurance is shown in the Declarations for either Building or Business Personal Property.

We will pay for loss or damage to Covered Property by "fungi", wet rot, dry rot, bacteria and virus. As used in this Additional Coverage, the term loss or damage means:

**(a)** Direct physical loss or direct physical damage to Covered Property caused by "fungi", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungi", wet rot, dry rot, bacteria or virus;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet rot, dry rot, bacteria or virus; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet rot, dry rot, bacteria or virus is present.

**(3)** The following exclusions do not apply to this Additional Coverage . . . :

**(b)** Exclusion **B.1.h.**, **Virus or Bacteria**[.]

*Id.* at 73. "'Specified cause of loss' means the following: Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." *Id.* at 37.

<u>Exclusions</u>

Under Exclusions, the Policy states

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

***

**h. Virus or Bacteria**

**(1)** Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**(2)** With respect to any loss or damage subject to the exclusion in Paragraph **(1)** above, such exclusion supersedes any exclusion relating to "pollutants and contaminants".

*Id.* at 22, 24.

## III. LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).

## IV. DISCUSSION

### A. Policy Interpretation

Because this is a diversity case, the court "must apply the conflict-of-laws rules of the state in which the federal court sits," here, Connecticut. *Cantor Fitzgerald Inc. v. Lutnick,* 313 F.3d 704, 710 (2d Cir. 2002) (citation omitted). "Connecticut follows the 'most significant relationship' approach of the Restatement (Second) for analyzing choice of law issues involving contracts," *BMO Harris Bank N.A. v. P B & J Logistics Inc.*, No. 3:18CV221, 2020 WL 1532278, at *3 n.5 (D. Conn. Mar. 31, 2020), and recognizes "a rebuttable presumption in favor of applying the law

of the state which the parties understood was to be the principal location of the insured risk." *SA Hospitality Group, LLC v. Hartford Fire Ins. Co.*, No. 3:20CV1033, 2021 WL 2291116, at *4 (D. Conn. June 3, 2021) (internal quotation marks omitted). The parties agree that Texas, where the insured property is located, has the most significant relationship to the transaction and that Texas law applies to the interpretation of the policy. ECF No. 51 at 14; ECF No. 52 at 15.

Under Texas law,

> the court must construe an insurance policy following the general rules of contract interpretation. . . . Interpretation of the policy is a question of law for the Court. . . . The court must determine the parties' intent based on the policy as written. . . . If a policy is worded so that it can be given only one reasonable construction, it will be enforced as written. . . . If it is ambiguous, the court must adopt the construction that favors the insured.

*PSG-Mid Cities Med. Ctr., LLC v. Jarrell*, No. 3:20CV2477, 2021 WL 1894696, at *2 (N.D. Tex. May 11, 2021) (internal quotation marks and citations omitted). "Whether a contract is ambiguous is also a question of law. . . . A contract is not ambiguous just because parties advance different interpretations." *Selery Fulfillment, Inc. v. Colony Ins. Co.*, No. 4:20CV853, 2021 WL 963742, at *3 (E.D. Tex. Mar. 15, 2021).

B. Virus Exclusion

The Defendant argues that coverage is expressly precluded by a clear and unambiguous virus exclusion. That clause states:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> ***
>
> **h. Virus or Bacteria**
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

ECF No. 51-1 at 24.

According to the complaint, "Plaintiff's business was unable to operate due to the stay-at-home orders for public safety" and "[a]s a direct consequence of the stay-at-home orders for public safety issued by the State of Texas, Plaintiff's exam practice suffered business losses." ECF No. 47 at ¶¶ 64-65. The complaint further alleges "Plaintiff's business loss occurred when Dallas County issued its March 22, 2020 Shelter-in-Place Order, directing all 'non-essential' businesses to cease operations at physical locations and prohibiting the gatherings of 'non-essential' individuals." *Id.* at ¶ 71.

The broad language of the virus exclusion here covers any loss where a virus appears in the chain of causation. Specifically, the virus exclusion precludes coverage for loss or damage "caused directly or indirectly" by "[a]ny virus" regardless of whether "any other cause or event . . . contributes concurrently or in any sequence to the loss." ECF No. 51-1 at 24. Plaintiff's allegations make clear that its claimed losses stem - at least indirectly - from the COVID-19 virus. The complaint acknowledges that the stay-at-home orders were issued in response to the spread of the virus. *See* ECF No. 47 at ¶¶ 64-65. The virus was in the chain of causation for Plaintiff's losses and the exclusion therefore precludes coverage. Texas courts applying Texas law have concluded similarly. *See Frosch Holdco, Inc. v. Travelers Indem. Co.*, No. 4:20-CV-1478, 2021 WL 1232777, at *2, *5 (S.D. Tex. Feb. 11, 2021) (finding that identically worded virus exclusion barred coverage for Plaintiff's business interruption losses "as a result of quarantine, shelter-in-place, and stay-home orders issued in the United States and around the world."); *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *5 (E.D. Tex. Dec. 7, 2020) (finding virus exclusion was unambiguous and barred plaintiff's coverage because "[w]herever it falls in the sequence of events, COVID-19 played a significant and substantial role in plaintiff's losses."); *Vizza Wash, LP v. Nationwide Mutual Ins. Co.*, 496 F. Supp. 3d 1029, 1040 (W.D. Tex. 2020)

("[T]he Court finds that [the] Virus Exclusion is unambiguous, as it plainly excludes 'loss or damage' caused *even indirectly* by a virus[,]" precluding coverage for plaintiffs' business income losses) (emphasis in original); *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 361 (W.D. Tex. 2020) (concluding that virus exclusion was unambiguous and precluded plaintiff's losses sustained as a result of Texas's order closing non-essential businesses because "it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing."). In fact, "the clear majority of district courts" have determined that virus exclusions "clearly and unequivocally bar[] recovery of losses associated with government closures due to COVID-19 and the global pandemic," *Sys. Optics, Inc. v. Twin City Fire Ins. Co.*, No. 5:20-CV-1072, 2021 WL 2075501, at *4 (N.D. Ohio May 24, 2021), including exclusions substantively identical to the one at issue here.[3] *See, e.g., LDWB #2 LLC v. FCCI Ins. Co.*, No. 1:20-CV-425-LY, 2021 WL 2744568, at *9 (W.D. Tex. July 1, 2021) (finding exclusion for loss or damage "caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" barred coverage for COVID-19 business interruption losses) (citing cases).[4]

---

[3] Plaintiff maintains that cases in support of Defendant's interpretation of the exclusion "were determined after summary judgment or on appeal after trial, thereby providing those courts with ample evidence to decide whether or not the Exclusion applied." ECF No. 52 at 29. The above cited cases, however, were decided on Rule 12(b)(6) or Rule 12(c) motions. In any event, because I find the virus exclusion to be unambiguous, no factual development is necessary.

[4] A few courts have concluded that the exclusion does not apply to losses caused by executive orders issued in response to the pandemic. The court in *Seifert v. IMT Ins. Co.*, No. CV 20-1102, 2021 WL 2228158, at *6 (D. Minn. June 2, 2021) concluded that the virus exclusion was "intended to preclude coverage only when there has been some direct or indirect contamination of the business premises, not whenever a virus is circulating in a community and a government acts to curb its spread by means of executive orders of general applicability." *Id.* at *6. This is not a persuasive reading of the policy's plain language, which contains no such limitation and by its terms encompasses losses "indirectly or directly" caused by a virus.

In response, Plaintiff contends that the Virus Exclusion does not apply, for several reasons. First, Plaintiff points out it purchased special virus coverage. ECF No. 52 at 19.

The Policy provides:

> **Limited Coverage For "Fungi", Wet Rot, Dry Rot, Bacteria and Virus**
> **(1)** The coverage described in Paragraph **(2)** below only applies when the "fungi", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
> **(a)** A "specified cause of loss" other than fire or lightning;
> **(b)** An "equipment breakdown accident" occurs to "equipment breakdown property", if the Equipment Breakdown Additional Coverage is attached to this Coverage Part.

*Id.* at 73. The Policy defines "specified cause of loss" as "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." ECF No. 51-1 at 37.

The coverage does not apply, and Plaintiff offers no reason why it should. By its terms, to trigger coverage under this provision, the loss - unless it results from an equipment breakdown (not relevant here) - must be caused by a "specified cause of loss." Plaintiff does not allege or argue that its losses were so caused. The Court agrees with the Defendant that no specified cause of loss applies here. ECF No. 56 at 6. Accordingly, there is no coverage under this provision, and it does not operate to negate the virus exclusion.

Plaintiff next argues that the virus exclusion is ambiguous, and discovery should be permitted. ECF No. 52 at 19. Plaintiff posits that "the list of 'virus, bacterium or other microorganism'" is "vague and indefinite" because a virus is not a microorganism. ECF No. 52 at 20. But a "bacterium" is a "microorganism" and so the meaning of the sentence is clear even if a virus is not properly considered a "microorganism." More importantly, a debate about whether a

virus is a microorganism does not make the term "virus" ambiguous as it applies to this case; the complaint itself acknowledges that COVID-19 is a caused by a virus. ECF No. 47 ¶¶ 43- 44, 47.

Plaintiff next argues that Defendant should be estopped from enforcing the virus exclusion based on the doctrine of regulatory estoppel. ECF No. 52 at 28. Plaintiff maintains that discovery is needed to determine what information was presented to state insurance regulators regarding the exclusion. *Id.* According to Plaintiff, Defendant and/or ISO might have misled state regulators as to the exclusion. *Id.* But Texas has not adopted the doctrine of regulatory estoppel, nor does Plaintiff argue that it has. ECF No. 52 at 28 n.1. *See Frosch Holdco, Inc. v. Travelers Indem. Co.*, No. 4:20-CV-1478, 2021 WL 1232777, at *6 (S.D. Tex. Feb. 11, 2021) (finding "no basis in Texas law for applying the doctrine of regulatory estoppel"); *Indep. Barbershop, LLC v. Twin City Fire Ins. Co.*, 499 F. Supp. 3d 331, 336 (W.D. Tex. 2020) (refusing to apply a regulatory estoppel argument because the doctrine of regulatory estoppel "has been rejected by courts applying Texas law").

Plaintiff also contends the virus exclusion does not apply because it is counter to the insured's reasonable expectations of coverage. Plaintiff asserts that it "reasonably expected that it was paying premiums under the Policy for Virus Coverage, business income loss, extra expense, and civil authority coverage, and that it would not be caught in some semantical trap that enabled Defendant to deny coverage on some ambiguous technicality and contorted reading of the Policy that relies on facts that have not even been established to exist." ECF No. 52 at 13. *See* ECF No. 47 at ¶ 31 (alleging that Plaintiff "purchased the Policy with an expectation that it was purchasing a policy that would provide coverage in the event of a business interruption, such as that suffered by Plaintiff as a result of the COVID-19 Pandemic.") According to Plaintiff, "the reasonable expectation of an insured" is that the exclusion "does not apply to global pandemics." ECF No.

52 at 22. Plaintiff fails to cite any Texas authority in support of this argument and instead points to *Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd.*, 489 F. Supp. 3d 1297 (M.D. Fla. 2020), in which the court determined that a differently worded virus exclusion was ambiguous, stating "[d]enying coverage for losses stemming from COVID-19, however, does not logically align with the grouping of the virus exclusion with other pollutants such that the Policy necessarily anticipated and intended to deny coverage for these kinds of business losses." 489 F. Supp. 3d at 1302. Plaintiff's reliance is misplaced. The *Urogynecology* court declined to reach "a decision on the merits of the plain language of the policy" because certain "forms" referenced in the exclusion for loss caused by a "virus" were not included in the policy or provided to the court. *Id.* at 1302–03.[5] But more to the point, mere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage. "Where the language of a contract is clear," as it is here, "a court's inquiry should begin and end with the policy's language." *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (applying Texas law). *See Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 648 (5th Cir. 2008) (stating that "under Texas law, the reasonable expectations of the insured are not to be considered when the policy language is unambiguous"); *Constitution State Ins. Co. v. Iso–Tex. Inc.*, 61 F.3d 405, 410 n.4 (5th Cir. 1995) (noting that "Texas law does not recognize coverage because of 'reasonable expectation' of the insured.").

Finally, Plaintiff contends that the exclusion is ambiguous because it does not include the term "pandemic." ECF No. 52 at 24. But the lack of a specific reference to a pandemic does not

---

[5] Insofar as it concluded that it was unclear as to whether a virus exclusion precluded coverage, *Urogynecology Associates* has been described as an "outlier." *100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, No. 20-CV-8452 (JMF), 2021 WL 2333244, at *3 (S.D.N.Y. June 8, 2021); *In the Park Savoy Caterers LLC v. Selective Ins. Grp., Inc.*, No. CV 20-6869, 2021 WL 1138020, at *3 n.5 (D.N.J. Feb. 25, 2021).

render the provision ambiguous. *See Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1041 (W.D. Tex. 2020) ("[T]he fact that [an insurer] could have used even more specific language does not [necessarily] render ambiguous the language that [it] actually used”). There is ample authority holding that the omission of the term pandemic does not make a virus exclusion ambiguous. *See Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 1:20-CV-4736-GHW, 2021 WL 2403088, at *9 (S.D.N.Y. June 11, 2021) ("That the word 'pandemic' is absent is irrelevant when the word 'any' is used, indicating that viruses of all varieties are included."); *Image Dental LLC v. Citizens Ins. Co.*, No. 20-CV-02759, 2021 WL 2399988, at *9 (N.D. Ill. June 11, 2021) (rejecting plaintiff's attempt to distinguish pandemic from virus, reasoning "[t]rue, the policy does not mention a 'pandemic.' But it does mention losses caused 'directly or indirectly' by a 'virus.' So, in the event of a pandemic caused by a virus, the policy's language brings us to the same place."); *100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, No. 20-CV-8452 (JMF), 2021 WL 2333244, at *2 (S.D.N.Y. June 8, 2021) (rejecting plaintiff's argument that virus exclusion did not apply to losses caused by a “national state of disaster like the current pandemic” and explaining that "in the context of a viral pandemic, the word pandemic describes a disease's geographic prevalence; it does not replace disease as the harm-causing agent.”) (internal quotation marks and citation omitted); *Michael J. Redenburg, Esq. PC v. Midvale Indem. Co.*, —— F. Supp. 3d ——, No. 20-CV-5818 (PAE), 2021 WL 276655, at *8 n.5 (S.D.N.Y. Jan. 27, 2021) (rejecting same argument because “the COVID-19 pandemic is simply a large-scale outbreak of a virus.”). I therefore conclude that the virus exclusion applies and precludes coverage.[6]

---

[6] Because Plaintiff's claim for declaratory relief is foreclosed by the plain terms of the virus exclusion, I need not reach the Defendant's alternative arguments for dismissal under Rule 12(b)(6).

## V. CONCLUSION

For the reasons set forth herein, the defendant's motion to dismiss the third amended complaint (ECF No. 50) is granted. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: August 4, 2021
Hartford, Connecticut

/s/
Michael P. Shea, U.S.D.J.